The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this Honorable Court. Good morning everyone. The first argued case this morning, December 20, 1203, Edgewell Personal Care Brands v. Munchkin, Inc. Mr. Bradley, proceed. Good morning, Your Honors, and may it please the Court. For both the 420 patent and the 029 patent, the District Court erred in its claim construction rulings. And those errors resulted in the Court improperly granting summary judgment of non-infringement. The claim constructions were wrong. The Court narrowed the terms in ways that are not supported by the intrinsic record. The 420 patent claims a cassette with a clearance. The clearance is a space. The space is configured to prevent interference between the cassette and another structure, such as a pail. The District Court originally construed it that way and got it right. The PTAB, in denying institution of Munchkin's IPR, construed it the same way and also had it right. And perhaps most importantly, the specification describes it in that exact way. The embodiments disclosed in the specification make very clear, and the supporting description makes also clear, that the clearance is a space that prevents interference with another structure. In Figure 1 of the 420 patent, the movable member 58 is allowed to move precisely because the cassette has that clearance space that allows it to move. In another embodiment, Figure 7, the clearance space allows the interfering member of the pail to complement that clearance space, allowing them to mesh perfectly well together. That's what the clearance is. The problem is, on summary judgment, the District Court shifted that meaning. Instead of requiring a space that prevents interference between a cassette and a pail, on summary judgment, the District Court now requires that there be a space between the cassette and another structure, such as a pail. Counsel, this is Judge Moore. I tend to agree with you that the District Court's claim construction changed in response to sort of its realization that after claim construction, the parties still had a dispute over the word clearance. And I likewise tend to agree with you that the new construction excludes Figure 7. One thing that Munchkin argues that I'd like you to address is whether, during prosecution history, you took action to make clear that you were, in fact, excluding Figure 7. Your Honor, there was nothing that happened during prosecution that impacted the inclusion of Figure 7. The only thing that Munchkin points to is the divisional application that preceded the one that issued us the 420 patent. In that divisional application, the claims were directed to a cassette with this clearance, but also were directed to the interfering member with the pail. The claims covered both the cassette and the pail, and specifically claimed the pail with the interfering member embodiment, as shown in Figure 7. The language that Munchkin points to has nothing to do with the cassette. The language that Munchkin points to during prosecution is where the examiner said that the pail shown in Figure 1 is different than the pail shown in Figure 7. The examiner made clear that the pail shown in Figure 7 is the only one that has the interfering member. It was that discussion where the examiner ended up saying that the Figure 1 embodiment with movable portion 58, quote, appears to have nothing to do with, close quote, the embodiment of Figure 7. In that regard, the examiner was exactly right. The interfering member in Figure 7, which is part of the pail, is indeed different than the pail structure in Figure 1. None of that impacted the cassette. The 420 patent is directed to and claims the cassette and the clearance. That clearance in the cassette works equally well with both Figure 1 and with Figure 7, with both of those embodiments. Nothing happened during prosecution that restricted that. And the district court still nonetheless eliminated the Figure 7 embodiment from the scope of the claims through this requirement that's not described in the specification where the judge required a space between the cassette and the pail. That's not what the figures show. That's not what the specification describes. In fact, the judge explained that if you have a pail that takes up the clearance space or fills that clearance space or replaces the space that was otherwise there, the judge says, well, all of a sudden now you didn't have a clearance space after all. Respectfully to the district court judge, that makes no sense. It's akin to saying, if I may use an analogy, that there's a parking space. The parking space allows a car to come and park. It prevents interference between the car and some other structure that might be in the parking space. Under the judge's new construction, the judge says, no, there has to be a space between the tires on the car and the asphalt of the parking space. That's not what the space is talking about in the 420 patent. The clearance space in the 420 patent is talking about a space that precisely allows another structure to come in and be a complementary fit to prevent interference. And the whole reason... That's more again. Is it your position that the pail is not claimed and therefore shouldn't have been part of what impacted the judge's decision on claim construction? The pail is indeed not claimed. It's not part of the claims. Now, the judge originally construed clearance to be configured to prevent interference between a cassette and another structure, such as a pail. That's the same as the PTAB ruling and essentially the same as what Ed wrote. Yes? This is Jess Morgan. Is it correct to say the claims are only directed to the diaper cassette and that they can contain a clearance even before it's installed in a pail? Yes, Your Honor. Absolutely. The clearance can be discerned simply by looking at the cassette and reading Claim 1 in light of the specification. Claim 1 talks about a clearance, but the word clearance doesn't do all the work by itself. The word clearance is described further in the claim, and that's at APPX 120. I'm looking at Claim 1, and it says the clearance is in a bottom portion of the central opening of the cassette. It says the clearance delimits a portion of the volume that has a reduced width relative to the portion of the volume above it and has other descriptors as well. Other claims say that the clearance is in the shape of a chamfer. Another claim says it's entirely located in a bottom half of the annular wall. The claims make clear that the clearance can be discerned and determined simply by looking at the cassette and looking at it under a proper construction. The District Court on Summary Judgment erred in reconstruing the term and construing it a term that's not consistent with the intrinsic record and improperly granting summary judgment on that basis. Mr. Bradley, this is Judge Hughes. Can you help me with the drawings a little bit? I think I follow you, but I just want to be clear. I'm looking at figures J, figure 7. It's on page 16 of your brief. It's the one that has interfering marked in green. Is that interfering number an actual structure that the cassette rests down onto, that little green triangle? Yes, Your Honor. The green triangle on page 16 of the blue brief is part of the pail. I have here in my office a pail. The green portion is what we've highlighted in green. It's a physical portion of the pail that sticks up. The whole purpose of it is if you were to take that same cassette shown on page 16 and flip it upside down, that interfering number on the pail would cause the cassette to rise up above the top of the pail and the parapet. Okay. Can you then look, I guess, back at your brief at page 15 at figure 1? You've got a red triangle marked down there, and it looks like something is coming through that. Is this just a different structure? I'm just having a hard time following that. Yes, Your Honor. This is the figure 1 and figure 3 embodiment. It's the same in both figures 1 and 3, which is a different pail structure than the one we were just looking at. The cassette is identical. I think I heard you tell Judge Moore that this isn't about the pail. It's just about the structure. Does this mean these new-style cassettes with the clear might work, and the old-style pails that didn't have the inter-member, but that's all kind of irrelevant? What's important for the clearance claim is it's a new-style cassette that, if installed in the pail with the interfering member, is almost one correct way. That's correct, Your Honor. The new-style cassettes with the clearance, including both Edgewell's products and the Munchkin products that, admittedly, are designed to work with our pails, both of them would accommodate and work with the pail structure shown in piece 7. That's how they actually are in the real world. Another option that the patent discusses is just figure 1 slash figure 3 embodiment, which is a different pail structure. I did want to, if I may, switch and talk a little bit about the 029 patent because the district court there as well got the claim construction wrong. The claim describes an annular cover for the cassette, and it says the annular cover is, quote, having an inner portion and a top portion, including a tear-off outwardly projecting section. That's what the claim talks about. Now, the judge during claim construction said that all three of those parts of the cover have to be, quote, a single structure, quote, a single component, quote, a single piece. The problem is the specification nowhere says that. The claims don't say it. The specification doesn't say it. The prosecution history doesn't say it. And the judge used that construction to exclude, on summary judgment, no less, exclude Munchkin's accused cassettes simply because their annular cover, the one that absolutely has an inner portion and a top portion and a tear-away section, he said on summary judgment those are excluded simply because they're formed from two pieces rather than being a single piece. But the claims and the spec and the prosecution history never require it to be a single piece. There have been no disavowing statements, certainly no disavowing statements that are so clear and deliberate and unmistakable and I see that I'm into my phone. Continue your thought, Mr. Bradley. Thank you, Your Honor. There is no disavowing statement anywhere in the record. The examiner did not come forward and say, hey, here's a two-part cover in the prior art, and we said, oh, no, ours is a single cover. That never happened, nothing like it, and there is no disclaimer. We've also raised in our brief the term engage, but I would like to reserve the rest of my time. Any more questions for Mr. Bradley at this stage from the panel? All right, hearing none, we'll hear from the other side. Mr. McAllen. Thank you, Your Honors. May it please the Court. This is really, in regards to the 420 patent, a very straightforward case. To have a clearance, two things must be clear of each other and not touch, and so the space between two things is the very essence of clearance. Now, that was the district court's conception of the clearance from the very beginning, and that's why the court included the language, configured to prevent interference, into the construction, and what's going on is Edgewell now wants to ignore the And there was no reinterpretation here, and we know that for a couple of reasons. If you go back to the district court's original construction, the district court's analysis of the intrinsic record makes clear that the court believed that the clearance is, one, a space, two, adjacent to the annular wall, and three, configured to prevent interference between the annular wall and another structure. Now, in making that conclusion, the court recited, the concepts described by this disclosure are depicted in Figure 1. That's at APPX 24. The court also quoted the purpose of the clearance in Figure 1 in saying that the purpose of the clearance is to allow the closing mechanism 58 of the device to properly function by creating space for this mechanism to move through. Now, picking up on Judge Hughes's question, if you want to look at page 15 of the blue brief, this is depicted there where the mechanism 58, which is pulled out in a highlight in yellow, that structure of the pale, that is another structure. That is another structure that the parties have agreed is another structure in this case, and it moves along that dotted line path, and the point is that that structure 58 cannot touch the cassette. There must be clearance or space between 58 and the cassette. Otherwise, as the patent explicitly says, and this is at 638 through 40, if the chamfer clearance were not provided, the cassette would impede the movement of movable portion 58. The whole point is not to impede the movement of movable portion 58. So from that analysis alone, we know that the district court is conceiving of a clearance as, in essence, a buffer space, a space that separates the annular wall from another structure, and when that space disappears, there's no more separation. You have interference. You have contact. You have interference. Counsel, this is Judge Moore. Is it fair to say the original construction didn't require space between the structures when the cassette was installed in the pale? No, I think it does require. The court's original construction, given the configured-to-prevent-interference language, requires that there be space between the annular wall and another structure. That's the essence of clearance. That annular wall has to be clear of another structure. There had to be clearance to prevent interference between the cassette and another structure. Is that right? Correct. That angled annular wall, there must be clearance between that wall and another structure. In other words, there must be space between that wall and another structure. And we know that even further because of the very critical analogy. Counsel, there has to be that space. But what I'm struggling with is the idea that there has to be space between the structures when the cassette is then installed in the pale because the claims don't speak to the pale at all. They don't cover the pale. So the space that is required has to exist between the cassette and another structure, but then when the cassette is installed in the pale, why are we now infusing that space into that location when pale is not part of the claim construction? Well, so, again, our position is, and this is clear from the language of the construction, that another structure is a structure in the pale. And the parties did not dispute that below. In fact, Edgewell affirmatively stipulated to that point below. So this claim was construed in a functional way in relation to a structure that is outside the cassette. And Edgewell may have a problem with that, but the problem goes to the configure to prevent interference with another structure language, which, again, is part of the court's original construction. And so the point here is that Edgewell cannot agree that the configure to prevent interference language is correct and then go back and pretend that it doesn't mean precisely what it actually means. And to more specifically answer your question, you cannot know whether the clearance is configured to prevent interference with another structure unless you insert the cassette in the pale. And the district court actually recognized that fact because Edgewell made the same argument below, and the court said, well, if you're just going to hold the cassette in your hand in the abstract away from the pale, then it's true that every single cassette in the universe has that space. You can't know that it's configured to prevent interference between another structure until you actually put it in relation to another structure. And on that point, I want to highlight one other thing that counsel said during his argument. He said that the clearance can be discerned simply by looking at the cassette. And what's notable about that is that is directly contrary to Edgewell's arguments below. Edgewell's expert below took the position that the test for interference is, quote, whether the cassette can function properly in the pale. That's at APPX 3550. Edgewell knew below that you had to put this thing in the pale to determine whether there was clearance. That, again, is highlighted by the fact that in responding to one of Munchkin's primary prior art references, which is a European community design reference that is essentially identical to the 420 patent and depicts simply the cassette. It doesn't depict the pale. It just depicts the cassette. Well, in that case, Edgewell argued that, quote, that registration simply depicts the cassette itself and lacks a disclosure regarding, quote, how the cassette works or what it is to be used in, end quote, and it therefore concluded that that registration did not depict a cassette, sorry, quote, a clearance as construed by the court, end quote. That's at APPX 4318. So it is simply not the case that Edgewell below argued that the cassette could be discerned simply by looking at the cassette. They've changed that position. They've changed that position because they need to try now to get around the configure to prevent interference language. And I want to highlight one other thing. Sorry. Can I interrupt here? This is Judge Hughes. I want to ask you about these drawings, too, and see if you can explain them to me. I suspect you have a different view. So I'm looking at the ones on page 14 and 15 of the blue brief, which has the yellow thing, which is 58. I'm not sure what that exactly is. Is it your view that that structure 58 won't work at all if the cassette touches it or rests against it? That's correct, Your Honor. And where in the record or the patent or anything like that suggests that it won't work if it touches it? Because it seems pretty clear that if we're looking at Figure 7 that it will work even though it's resting on the specific interfering member. Yeah. And so the patent at 638-40 says if the chamfer clearance were not provided, the cassette 30 would impede the movement of the movable portion 58. Well, wait, wait, wait. Can I stop you there? Because I'm not sure that I understand what you're saying. I mean, if that shows just touching will do it, or if it's the old-style cassettes that don't have any kind of cutout at all. And that seems to me to be two different things. If it's fully squared off instead of having this triangle cutout, it might completely impede 58. But if it's just punching, you know, one tip of 58 but still allows that diagonal movement, then it would work. The problem here, Your Honor, is that the only possible way to give this claim any sort of ascertainable scope whatsoever is to equate interference with contact. That is the only possible way that any of this makes sense. Otherwise, I've got a situation where I can put it in the pail and it can touch. I can put it in the pail and it cannot touch. I can put it in the pail and it can graze against, or I can put it in the pail and it can completely impact. Well, I just don't understand why it has to be actual space rather than just touching but still allowing it to work, particularly given the whole point of this, which is so that you don't put the cassette in upside down. Let me give you one more reference, Your Honor. And this is at 635. It's right next to the other passage that I gave you in the 420 patent. It says a passive movement of the movable portion 58 is illustrated at B. It is observed that the movable portion 58 passes closely to the wall, defining the chamfer clearance. If the chamfer clearance were not provided, the cassette would impede the movement of the movable portion 58. And, again, the point here is that you can't have a cassette that both prevents interference and allows interference. And that's exactly what a construction, the construction that Edgewell is urging right now. There's just no simple way to put any limits on the scope of the clearance otherwise. And I think I heard counsel say that, you know, the cassette would sit too high in the pail if the clearance didn't match up perfectly under the Figure 7 embodiment. Well, the problem there is that the clearance is not directly correlated with any sort of fit inside the pail. I can craft a clearance, an angled wall, and more specifically an angled wall on the bottom half of that clearance at any number of angles and make them fit. I can shallow the angle. I can steepen the angle. I can cut off the top. I can just make the cassette a little shorter. And I can make it fit in the pail. So the clearance doesn't have any direct correlation on how the cassette actually fits inside the pail. And again, that's one of the big holes in Edgewell's position is that this would just swallow. It would completely swallow. Well, that sounds to me like almost like an indefiniteness argument about clearance rather than reading the term in light of the specification and the purpose of making it not be inserted upside down. I get that there's a bunch of different ways you could craft that cutout to make it fit and make sure you're putting it right side up. But that doesn't mean that it can't touch. It just can't. It has to fit in there in a way that will make the pail work. I guess we would ask, you know, what is – and it's conspicuous that Edgewell on appeal never argues that the accused cassettes actually do prevent interference between the angled wall and the pail. And there's just – again, it gets back to the problem that the real problem, if to the extent Edgewell has one with this construction, is the configured to prevent interference language. Because you cannot square that language both with the purpose of the clearance in 51 and with the purpose of the clearance – I'm sorry, the purpose of the clearance in Figure 1 and the purpose of the clearance in Figure 7. And that was the point of the prosecution history. Again, because this is claimed functionally in relation to a structure in the pail, the PTO specifically recognized that the function of the clearance in the Figure 1 embodiment is completely different from the function of the clearance in the Figure 7 embodiment. Those two things are mutually exclusive. They serve two completely different purposes. One, the Figure 1 embodiment, is really about a clearance that creates space between two structures. The other is actually less about space at all. It's more about structure and making two shapes complementary to one another. They're just two completely different things. And if you want to have them under the same umbrella – again, our position is there's no proper construction that would put those two constructions together, those two embodiments together. But to the extent you want to try to amalgamate those two embodiments and have them fall under a single construction, you have to get rid of the configure to prevent interference language. And Edgewell is not challenging that language on appeal, and that's the entire problem. And I guess quickly, I'd like to maybe address the 029 patent while I have a bit of time. In terms of the intrinsic record and the support for the court's construction, our position is the claims make that clear themselves. But also the specification at 259 through 62 – this is quoted by the district court in its construction – says the outwardly projecting Section 28 has an Area 40 of reduced section connecting it to the top Area 27A to weaken the material and allow it to be torn off. That's really the crux of the matter. This is like a tear-off tab on a milk jug. This is not something where shrink wrap goes over the top of a different cover and you can call that a tear-off. The very essence of the tear-off is that you tear it off from the cover itself, and that's well supported in the intrinsic record. Lastly, on the doctrine of equivalence issue, in terms of the case law, our position is limitations that specifically recite the relationships of components to one another, those limitations must have equivalence. And in this case, we have a construed claim that requires and recites a specific relationship between components, specifically that the components of a single cover be made of the, quote, same structure. And you simply can't have an equivalent of that in a different structure. It's literally the opposite. And I see I'm at the end of my time, so if we have no further questions, I will end my argument. Any more questions for Mr. McCallum? All right. Thank you. And Mr. Bradley, you have your rebuttal time. Thank you, Your Honor. I'll go back to the 420 patent and that discussion. And my colleague across the aisle said that the function of the clearance, in their view, is different between Figure 1 and Figure 7. Respectfully, I disagree. I do not understand that position at all. The clearance in the cassettes is exactly the same. I have a cassette here in my office.  I can see the clearance. And it works equally well in multiple pale embodiments, including the embodiment of Figure 1 and including the embodiment of Figure 7. It sounds like at least Judge Hughes has the blue brief in front of his honor. On page 10 of the blue brief, we have depicted the original design clearance by both Edgewell and Munchkin, and side-by-side with the cassette that has a clearance. And I might have just misspoken. There is the original cassette design without a clearance, side-by-side with the redesign with a clearance. And as can be seen on Figure 10, one can tell simply from the cassette itself whether there is a space that is configured to prevent interference between the wall of the cassette and another structure, such as the pale. As I mentioned in my opening argument, the claim, for example, Claim 1, goes on to explain more information about what that clearance does, how it's configured, how it's positioned. It says that the clearance is in the bottom portion of the central opening of the cassette. It explains that it delimits a portion of the volume that has a reduced width relative to the volume above it. The claims, some of them describe the clearance as being in the shape of a chamfer. All of these make clear that the cassette itself has this clearance space. Sure, its purpose is to prevent interference. There is no discussion at all of having a space between a member of the pale and the cassette. The phrase, graze against, came up during my colleague's argument. Indeed, in Figure 1, that movable member in yellow, that movable member, very well may graze against the cassette. The purpose, if the cassette were, if I may finish. Finish your thought, please. The point is, if the cassette were like the old design, where it's fully squared off, or, for example, if it were upside down, where it's fully squared off, there is no clearance on that side of the cassette, and it would not work. But the clearance is there. The specification supports what the district court originally held, and that construction ought to be re-put in place and summary judgment vacated or reversed. Thank you, Your Honors. Any more questions for Mr. Bradley? All right, hearing none, thanks to both counsel, the case is submitted. That concludes this panel's argued cases for this morning. The Honorable Court is adjourned until tomorrow morning at 10 a.m.